Good morning. May it please the Court, my name is Stacey Tolchin and I represent Mr. Bonilla. I would like to reserve two minutes of my time for rebuttal. Mr. Bonilla was a long-term resident who was deported for a single misdemeanor firearms offense. As the law stands today, he would not even be subject to deportation after Medina Lara and Aguilera Rios. At the time of the 1995 IJ and BIA decisions, he was found to be ineligible for 212C because he was deportable for a firearms offense. As the law stands today, after the Supreme Court's decision in Judulon, he would be eligible for 212C. Mr. Bonilla filed his 2011 motion to reopen based on two grounds, ineffective assistance of counsel and the Judulon change in law. As to the first ground, the board found that there was no ineffective assistance of counsel and denied based on due diligence and lack of prejudice. Now the argument was that Mr. Rivera, the first attorney, failed to properly file a visa petition before filing a motion to reopen or a stay with INS. The law at the time under a matter of Arthur required that the board could not approve a visa petition, approve a motion to reopen unless a visa petition was granted. The board says that there's no way he would ever have gotten a visa in time anyway. Right. So if you look at the court's en banc decision in Sokup-Gonzalez, it's 272 Fed 3rd 1197. There, the court notes that a matter of Arthur actually said the board can't grant a motion to reopen until the visa petition is approved. So the motion to reopen could have been filed with the pending visa petition prior to the September 30th, 1996 deadline, which was six and a half months, and then could have been expedited by competent counsel. And then most likely or certainly may possibly for the prejudice standard have been approved before the board got to the adjudication of the motion to reopen. I mean, clearly competent counsel would have moved to expedite and advocated on behalf of a client there. Now, the other important thing to note is that the INS operations instructions at 242.1823 said that the INS would stay deportations once a visa petition was filed, as long as it was non-frivolous and the person was otherwise eligible for adjustment of status. Mr. Bonilla's case was obviously non-frivolous. He had a child with his wife, and he was immediately eligible for adjustment of status because while deportable for the misdemeanor firearms offense, there was no comparable exclusion ground. So he didn't even need a waiver for adjustment of status. Here, because Mr. Rivera failed to file the visa petition at all, he only submitted the motion to reopen with the marriage certificate and the birth certificate, there was no possibility of the motion to reopen being granted. What about, first of all, I would like you to get to the Achimian decision, but before that, our issue, because that's a significant one, and I'm not really clear on how it interacts with this case. So maybe you should go to that. But my other question is, assuming all that to be true, what about his due diligence between 2002 and 2008? So first on the Achimian issue, so Achimian and Mejia-Hernandez say that Heckler v. Cheney applies when there's no law for the agency to review, I'm sorry, law for the court to review. But the courts in the Third Circuit, the Tenth, the Seventh, and one more have found that Section 1252 H.U.D. So what is the legal issue here? And what if the board, it wasn't clear to me what the board actually decided on the sua sponte issue that you're trying to say was a legal error. I mean, my understanding is that your argument is that we can review, if the board thought it didn't have authority because it misstated the law in a sua sponte decision, we can review that, although we can't tell it what to do otherwise. But what's the legal mistake that we're supposed to be reviewing? Right. So the board says that it's not going to reopen for the change in law because the petitioner lost his permanent resident status when the board entered its order. And so therefore, essentially, his posture has fundamentally altered. So they're basically saying, we can't reopen the case because he's not a permanent resident anymore. But that is contradicted by Contreras-Boca Negra at the Tenth Circuit. There's a footnote in Niken from the Supreme Court that when a case is reopened, you're restored back to the status that you had prior to the entry of the removal order, the deportation order here. So if the board reopened the case, he would be restored back to being a permanent resident and then could apply for 212C. Technically, if the case was reopened, he wouldn't be deportable at all because of the firearms law that's changed. But the fact that they cite matter of lock in the board's decision at page six shows the misunderstanding that the board believes it can't reopen because he was ordered deported and he was physically deported. But he's going to ask us to remand it. So with instructions to the board that they can't they have authority to grant this gentleman asylum? Not asylum, but to remand for a hearing on 212C. Yeah, I mean, I think also the board needs to look at a matter of GD, which is their case on whether a change in law requires sua sponte reopening. And there was no more case that was more fundamentally a change in law on the law of 212C than Jutuland, except for possibly St. Cyr. I mean, for 50 years or more, the case law had said you could never get 212C if you were deportable for a firearms offense. Jutuland changed everything. I mean, this was a fundamental change in law by far. And the fact that Petitioner was deported, that doesn't alter any of these schemes as opposed to him. But what the board actually said was the respondent has not addressed the effect of his deportation on his current eligibility for 212C waiver. So it does say that and even respondent recognized that Petitioner filed a reply brief in the record at page 32 addressing all of those issues. I mean, if the case were reopened, he would be restored back to being a permanent resident. And he's been here since 1999. So there was no issue of the unrelinquished domicile for purposes of 212C. Then I guess the other argument that the respondent is making, as I understand it, is essentially well all of this that the decisions were proper when made and you can't go back retroactively like this. With regard to both the Jutuland question but also with regard, I gather, to the effect of the deportation or the removal on his lawful permanent resident status. Matter of G recognizes that you can't, GD, sorry, you can go back, right? If there is a fundamental change in law that alters the scheme that was the sole basis for the removal or the deportation order, you can go back. I did want to address the due diligence issue while I have time. From 2001 until 2008, the Petitioner did exercise due diligence. After he came back in 2002, he went to a legal clinic where he met with somebody who advised him that he should wait a few years, which he did. And the scope of that just, yeah. I mean, that's kind of strange because for one thing, it wasn't his lawyer and it was very vague. And besides which, it was a few years and he waited six. Well, I mean, he didn't understand what was going on. What was going on, I believe, is that the law on adjustment of status, which was that if you had been deported and come back in illegally, then there was, there's a 10-year bar to getting a waiver. The law was flip-flopping on this issue on whether you could get the waiver if you spent the 10 years here or did the 10 years have to be outside the U.S. This has now been addressed by a case called Carrillo de Palacios, which says you've got to spend the 10 years outside the U.S. But I think that's what was going on. But even so, that would have run well before 2008. From having come back in 1999. Yeah, I mean, I, you know, he didn't understand what's going on. There just seems no way during that time period that somebody who was actually trying to deal with this wouldn't have dealt with it. Yeah, I mean, he didn't understand what was going on. Do we have any case law where a period of six years or thereabout was considered to be due diligence, waiting that long? I don't know offhand. The seminal cases are Avogadro and Garamani. I believe that there are cases that are that long. I do want to point out... But usually there was something going on the whole time. And here he was doing nothing for six years. Well, I mean, I think he was waiting on the advice. I mean, I also just want to point out that this is a man... But what affirmative act did he take other than going to the clinic and meeting with the lawyer whose name he can't remember? So that was it. And then he goes to the notary, Eddie Bonilla, who then files for adjustment of status, most likely believing that those 10 years could be spent in the U.S. What year did he go to the... 2008. So from 01 to 08 is our time period. And I have 47 seconds, so I'd like to reserve my remaining time. Thank you. Good morning, Your Honors. May it please the Court, Eric Anderson representing the Attorney General. Mr. Bonilla was ordered deported in 1995 and deported to El Salvador in 1996. And there are two things that aren't disputed about this. It was lawful at the time, and in fact, in its current... What does that mean, the order can't be executed again? He can't be removed on that 1995 order again. In fact, he's in ongoing 240 proceedings right now that will determine whether or not he can remain in the United States. What are 240 proceedings, if you don't mind? Removal proceedings that were before 1997, pardon me, Your Honor, the statute provided for separate exclusion and deportation proceedings. Yes, I know, I know, I know, but I don't know what the relevance of that is. Well, he's in ongoing proceedings now, de novo proceedings from day one that have no... in which his ability to stay in the United States will be adjudicated. Is that this proceeding? No. So why is there... is another proceeding? In Los Angeles Immigration Court. Yet we're litigating the denial of his third untimely motion to reopen in this court. All of which I just mentioned because there seem to be two or three reasons why he's pursuing this still. First, an attempt to terminate the deportation proceedings based on the change in law on the firearms offense. That was not exhausted. Second, in order to pursue 212C... What do you mean it wasn't exhausted? He never asked the Board to reopen because of the change in law on the firearms. Yeah, he did. I mean, the opinion even says so. He did not ask the Board to reopen, Your Honor. In fact, the law that changed... The opinion by the Board on November 2nd, 2012, that cites Judulong. No, on the... I'm sorry, Your Honor. On the deportability of the firearms offense. The fact that his conviction no longer would be a qualifying firearms offense. He says despite the change in law set forth in Judulong, we do not find the proceedings should be reopened. Right. And in 2014, after this decision, Your Honor, in a 20HA letter he provided for the first time an argument that he was not deportable in 1995. But then... Well, I'm somewhat mystified. Then why is the Board citing Judulong? Well, Judulong was about availability of relief. What I'm talking about is that... I understand. It's because of the change in law. And I thought that's why they were citing Judulong, because there was a change in law. There are two changes in law. And they're saying despite the change in law, we don't think the proceedings should be reopened. At the time of this, there was one change in law. He's arguing a second change in law now. The one change in law is about the availability of 212C from Judulong. The other one, he did not exhaust, but he raised in 28J letters in this court... Which is what? The law based on Medina-Lara and United States v. Aguilera-Rios that because California does not exempt antique firearms... Oh, well, I understand. But what's the difference? I mean, he already has one change in law. So what's the difference? Sure, Your Honor. So I'll skip over why he might be seeking reopening for termination. We'll go on to the other issues, which is that 212C, which the court lacks jurisdiction to review the board's decision denying it. All right. Now tell me why. Well, the board did not make the determination he says it made. The board correctly determined that his LPR status was terminated. Well, let me ask you. Let's go back a second. Do you agree or what is your position on whether we should follow the other circuits that have held that on a sui spontanea reopening, if there's a legal or constitutional determination, we can review that? I don't think this case presents the issue. I understand that's what you think. I'm asking you if... I'm not authorized to take a position. You're not authorized to take a position? I have to defend the board's decision, and the board didn't resolve that issue here. Of course it didn't, because it's not their business, because it's a question of reviewability. But you have to take a position because you're standing as a lawyer before us, and it's an issue before us. Well, Your Honor, if the board had decided a legal question adverse to him, I believe I would have one. In this case, the board did not decide a legal issue against him. Well, he said that he lost his lawful permanent status upon the board's entry of a final order C, matter of lock. That is absolutely true, Your Honor. The issue is whether it would be reinstated if the matter was reopened, and that the board did not decide. In fact, I would say it assumed in his favor. If the board had simply said, why should we reopen, you're not an LPR anymore, that it would have taken one sentence to deny his motion to reopen for 212C. Instead, what it said is that you have not addressed the issue of your lawful unruly position. Now we're told that he did address it in a reply brief, and we're told, I haven't looked, that you agreed to this. No, I did not. I did not agree that the board addressed this issue. In fact, I assumed it. Did he address it in his reply brief before the board? Yes, Your Honor. He asserted that reopening would restore his LPR status. All right. So then what's the problem? So now your position is essentially, well, they didn't make a mistake about the law, but they made a mistake about the record? No, Your Honor. What the board decided is that he did not address a lawful, unrelinquished domicile. 212C might require a lot of things. The only two that are relevant here is that the applicant has to be an LPR and has to have seven years lawful, unrelinquished domicile. Assuming the board reopened and assuming this would restore his LPR status, he would be on his first day of lawful, unrelinquished domicile. He has not had lawful, unrelinquished domicile since 1996 when he was deported to El Salvador. So, in other words, your position is that even if he was reopened and he was restored to his previous status, all that time in between wouldn't count towards domicile? He has not. That is correct because he came back illegally. His status terminated in 1996.  I'm sorry, Your Honor. So, and that is not a legal question in itself? Is that being contested here? I don't know. I don't think it's contested that, as the board said, Mr. Bonilla did not address the effect of reopening on whether he would have seven years lawful, unrelinquished domicile. That is uncontested. Okay, go ahead. So, that's the second issue. We have reopening for possibility of termination, which was unexhausted, reopening for 212C, which I don't think the board made the legal determination he wants the court to review, and third is reopening for adjustment of status based on Attorney Rivera's actions in 1996. Mr. Bonilla points repeatedly to the September 30th deadline to file a motion to reopen for older cases, but he does not address at all the fact that he retained Mr. Rivera on March 11th. He was scheduled to be deported on March 13th, and Mr. Rivera could not have gotten an approved visa petition in that time. To the extent she now argues, Mr. Bonilla now argues that he should have done a better job at requesting a stay from INS. First, we know he did, the record reflects, he did request a stay from INS, and it was denied. To the extent he argues Mr. Bonilla should have, Mr. Rivera should have done a better job, he's now arguing an unexhausted issue about Rivera's quality of representation before a different agency, and under this court's decision in Ballum, Chuck, that does not affect the fairness of the proceeding leading to the deportation order. It is not a basis for an ineffective assistance of counsel claim. Counsel, if we assume that the lawyers prior to the, what I'll call the pro bono lawyer, that they were, let's say we assume they're grossly incompetent. I take it your position is that even if that were true, that he still has the problem of overcoming what occurred between 2002 and 2008. Yes, Your Honor. Now, in fact, I think Mr. Abramovich, the second attorney, did a bang-up job for him. He immediately had the wife file a visa petition. He asked for permission to allow him to return before his period of inadmissibility expired, but instead of waiting for an answer on that, Mr. Bonilla came back unlawfully. Now, in fact, as things turned out, INS denied the request to return before the period expired, but that would have expired long ago if he had remained outside the United States. He could have come to the consulate, said here's my visa petition, please admit me again as an LPR, and he would have been here. I guess what I'm asking is that if we agree with you that the period of 2002 to 2008 shows a lack of diligence, is this case over? Yes, Your Honor, for the adjustment of status issue, for reopening for adjustment of status. I don't mean all of the immigration things he has going on, but I mean what's before this court right now? Yes, Your Honor. This appeal would be over. Yes, Your Honor. Without diligence, there's no equitable tolling, and it was correctly denied. Well, except for the question of the sua sponte. Yes, Your Honor, yes. Maybe you could tell me, just because it would be helpful, I don't understand why there's a separate proceeding other than this proceeding. I mean, your position, as I understand it, is that he was already deported and he shouldn't be here. What's going on in this other proceeding other than determining whether the early – is it other than a proceeding about whether he was already deported and should stay out of here or what? No, it's a proceeding based on you unlawfully entered in 1999, you're present without inspection, and you're removable. Without regard to the early removal. Without regard to the early removal. So, Your Honor, for all the reasons why he might be pursuing this litigation, even though there is the ongoing reopening, we don't believe the board abused its discretion and the petition for review should be denied. Well, I suppose there would be a question in the other one about whether he – whether he entered illegally in 1999 would depend on whether he was legally deported in the 19 – Well, Your Honor, even an LPR has to present himself from inspection. He can't cross without inspection. An LPR can be charged and found removable on the basis of entering without inspection. Okay. Very complicated. Thank you very much. Thank you, Your Honor. Just to address the diligence issue. Is it true that if we were to decide – I mean, do what you're asking us to do, he could still be removed because of the – in the other proceeding for other reasons? Well, he'd be a permanent resident that's subject to inadmissibility. If you look at the statute at 1101A13C5, I believe, it lists when a permanent resident is seeking admission. That is one of the grounds if they've entered without inspection, and then he could seek a waiver for lawful permanent resident cancellation of removal. It's a pretty easy waiver. I see. But on the due diligence, I do want to point out the departure bar is really significant here. The regulation at 3.2D said, and still says, that you can't file a motion to reopen if you've been deported unlawfully. The law, as you know, on that has been changing rapidly, and it wasn't until the Lynn case in 2007 that the first case came out that said, if you've been deported and then left, then you can file a motion to reopen. So in that period from when he was deported from 1996 until Lynn in 2007, he couldn't have filed a motion to reopen at all, right, because there was no jurisdiction from the board's perspective. Now that's all changed with many cases that you know about. You're saying that to say that it would have been futile for him to be duly diligent from 2002 through 2008? Yeah, correct, Your Honor. I mean, Lynn really is the first case that says, if you've been deported, then you can file a motion to reopen after your deportation. Then the law changes on that with Coit and Reyes-Torres and all these cases that invalidate the departure bar. But there was nothing he could do to reopen that order until Lynn came down. There were no other steps that he could have taken that would have impacted his status between 2002 and 2008? Well, right, he could have waited the 10 years in theory to apply for adjustment of status, which we know is now a dead end because that's lost. Now, the removal proceeding, just to be clear, DHS reinstated... Oh, I didn't say dead end. I'm sorry. So what happened was Bonilla, the notary, filed for adjustment of status with a waiver for him, thinking you could, if you were deported and you come back in legally... Ah, she said dead end because he wasn't here. No, it was a dead end because the case law now says you have to spend that 10 years outside. Let's go back to the sua sponte issue. I gather there's a disagreement between you as to whether, in fact, the brief before the board raised the relevant issue. So what's your response to that? Right, I mean, obviously we think everything was raised... Including what the board said wasn't raised? Yeah, it's in a reply brief in the record. They just don't address it. Because what he's saying is you addressed the matter-of-lock issue, but you didn't address the two things that the board noted, namely the effect of the deportation on his current eligibility for a 212C waiver, whether he can meet the lawful unrelinquished domicile requirement, i.e. the issue that you're talking about now, or adjustment of status. Right, so it's in the reply brief that we submitted, which the respondent concedes it's in the record. We said, you know, he's restored back to being an LPR as of 1999. He has the seven years of unrelinquished domicile. So that's all there. They just don't address it in the decision. But they don't address it because they say you didn't address it. Right, but it's in the record. I see. But that, I mean, that's sort of peculiar in the current context because it means that they didn't really make an erroneous legal decision. They just made an erroneous factual decision. Well, right, that's a factual decision. But the legal decision about matter-of-lock and saying that his status was fundamentally altered when he was deported, that all is an erroneous legal decision, right? That's the understanding that if you're an LPR order deported, then you can't reopen your case. But we know that Contreras, Boca Negra from the Tenth Circuit, all of these cases say, and again, when you reopen, you're restored back to being a permanent resident. So that's an erroneous legal conclusion. Okay. And I'm way over, so thank you very much. I just wanted to say to you that I was in the Supreme Court once when a lawyer for the government took the position you did, i.e., I'm not authorized to answer that question, and Justice Rehnquist said quite pointedly, you're an officer of this court, and if I ask you a question, you have to answer it. And you might tell your superiors that.
judges: Berzon, Owens, Marbley